DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

RYAN REZAEI (CABN 285133)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    ryan.rezaei@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>   v. <br> VICTOR MANUEL VIERA-CHIRINOS, <br>     a/k/a "Mojarra," <br>     Defendant. | CASE NO. 19-CR-367-2 CRB <br><br> **UNITED STATES' BRIEF REGARDING DETENTION** |

    The United States submits this response to the defendant's motion for release.  First, like the Court, the government cannot fully assess the release proposal without more information about the proposed custodians and sureties.  However, the government can offer the following preliminary thoughts: Because of the defendant's very serious medical condition, release may be appropriate.  But the defendant's release must be under strict conditions because of the danger he poses to the community and the risk of flight, both of which are presumed.  At a minimum, any conditions of release should include home confinement and electronic monitoring; a requirement to surrender all passports and also all Honduran identification documents; a requirement that he be released to a custodian (a surety requirement alone is not enough); and forbid him from any and all contact with his co-defendants.

The United States wishes to particularly emphasize the following: The organization of which the defendant was a member was violent. Its members included at least one double-murderer and others who carried guns. And it was a family-based organization: the defendant and his brothers and nephew led the organization. Despite this, it is because of the defendant's serious medical condition—and the fact that the government does not possess any direct evidence that the defendant was himself violent or possessed any weapons—that the government is open to release. But, again, only under the strictest of conditions.

The government's position may change based on the interviews of the proposed custodians and sureties. Since those interviews will take place after this brief is filed—the Court required the government to submit its response by April 24, 2020—the United States requests a hearing on the matter.

I.  BACKGROUND

The defendant and his co-defendants were initially charged in a 94-page complaint, which the government incorporates herein. Dkt. 1 (Complaint). As set forth in the complaint, the defendant and his brothers and nephew ran a drug trafficking organization which distributed drugs, including heroin and methamphetamine, in San Francisco. The organization supplied street-level dealers with these drugs and provided housing to them; up to ten men lived in each residence, sometimes with their partners and children. The street-level dealers were required to pay the organization rent, and could only live in a residence if they agreed to sell the organization's drugs. *Id.* at ¶¶ 15-24.

The defendant's brother, co-defendant, and undisputed leader of the organization, EDUARDO, is a double-murderer. *See* Dkt. 1 (Complaint), ¶¶ 189-204. Not only is he a double-murderer, he was caught on the wiretap coordinating a third murder. *Id.* EDUARDO also has someone who "legalizes guns" for him, and he was caught bragging about his rifle and pistol, stating "people get scared just by looking at them." *Id.* at ¶¶ 187-88.

The defendant's other brother and co-defendant, JORGE, was violent as well. As stated in the Complaint, JORGE was caught trying to obtain firearms in connection with violence he intended to carry out the next day. *See* Dkt. 1 (Complaint), ¶¶ 180-85 (JORGE discussing the acquisition of a "nine and a forty"—in other words, nine millimeter and .40 caliber firearms—so they can "do that thing

tomorrow"). Even the defendant's young cousin, ENRIQUE, carried a firearm. *See id.* at ¶¶ 272-73 (ENRIQUE stating that he had "protection" with him).

The government does not possess evidence the defendant himself carried firearms or used or threatened violence. But he played an important role within the organization. He distributed drugs and may have been involved with the houses where the organization's re-distributors (lower-level dealers) lived. *See* Dkt. 1, ¶¶ 147-48 (drugs), 166-78 (drugs), and 157-58 (discussion of the "rent" from the redistributor houses).

## II.     ARGUMENT

Given his role in the organization and his familial relationship with the other leaders of the organization—including his brothers EDUARDO and JORGE and nephew ENRIQUE—it strains credulity to think that the defendant did not at least know about the guns and violence for which his organization was responsible. For these reasons, the government believes the defendant may pose a serious danger to the community.

On the other hand, there is no direct evidence that the defendant possessed firearms or threatened or used violence. Given this—and in light of his serious medical condition—the government believes release may be appropriate, so long as the defendant's conditions of release are strict. Those conditions should include the following, at the very least:

- Home confinement and electronic monitoring;
- Release to a custodian;
- Posting of a bond; and
- The surrender of all passports and Honduran identification cards.

In addition, the defendant should not have any contact with his co-defendants—including his family members—except through counsel. The defendant's family members are particularly dangerous, and permitting the defendant to speak with them—they could arrange yet another "hit"—poses too great of a risk to the community.

After pretrial services has interviewed the proposed sureties and custodians—and assuming they are deemed suitable—the government will contact defense counsel to see if the parties can enter a stipulation regarding the defendant's release. Otherwise, the United States requests a hearing on the

matter. The United States requests a hearing because pretrial services will not have interviewed the proposed sureties and custodians by the time this brief will have been filed.

### III.     CONCLUSION

As stated, the United States is amenable to release for the foregoing reasons, but only under strict conditions and only assuming pretrial services deems the proposed custodians and sureties suitable.

DATED:  April 24, 2020                                             Respectfully submitted,

DAVID L. ANDERSON
United States Attorney


           /S/
RYAN REZAEI
Assistant United States Attorney